Weldon, J.,
delivered the opinion of the court:
The finding's of fact in this case show that the claimant, Jose Gonzales y Garcia, Pedro Gonzales, and Juan Gonzales were partners in a large flock of sheep which were held by them in the count}' of Socorro, in the Territory of New Mexico, in August, 1881, and while they were in possession of such sheep the defendant Indians made a raid and took and carried away a large number of the flock. The sheep at the time of the depredation were in the joint possession and under the joint control of the said parties.
This suit was commenced within the limitation of three years from the 4th day of March, 1891, by Jose Gonzales claiming, by the allegations of his petition, that he was the sole owner of the property embraced in this proceeding. The suit was commenced bj” him upon the theory that he had acquired the interest of the other parties, and that under the statute he was entitled to recover the full amount of the depredation. Being subsequently advised as to his legal rights, it is now sought to amend the proceeding by making Peter Gonzales and Juan Gonzales coplaintiffs suing as partners.
*249 'The suit was originally commenced by the consent of the two persons who now seek to be made plaintiffs.
It is found by the court that the sheep at the time they were taken were in the joint possession of all of said claimants, and by an agreement between them they were each to share in the proceeds and profits of the flock in the proportion each had contributed to the common stock, the said Jose Gonzales having put into such flock some of his own sheep. ■
It is insisted by the defendant’s counsel that inasmuch as the limitation of three years from the 4th day of March, 1891, had elapsed before these parties were sought to be made plaintiffs, it is now too late to make them plaintiffs, and that the original party is only entitled to recover his share of the damages incident to the depredation.
The claim was filed in the commencement of the suit to the full extent that it is now alleged, and the liability in amount to the Government is not increased by the introduction of the new plaintiffs, unless it be that the original party has the right only to his share of the amount of damage.
The court is of the opinion that the amendment should be allowed, and the ease should proceed in the name of all the parties whose joint interest was affected by the depredation. As has been decided in many cases, both in this and in the Supreme Court, that the Court of Claims is not bound by the technical rules of pleading and will always permit amendments either in .form or substance to the proceedings when no unjust advantage is given or damage is done to the rights of the defendants.
In this connection may be cited the case of Thomas v. United States (15 C. Cls. R., 335), which was a suit under the “Abandoned or captured property act’’ (12 Stat. L., 820). The substance of the decision in that case upon the subject of amendments is well stated in the fourth paragraph of the syllabi:
“Amendments designed to present a case as the parties may bo supposed to have understood it will be allowed. Amendments to introduce new parties notin privity'; to introduce a new cause of action; to enforce a penalty; or where the opposite party has been misled; or where the amendment will give one party an unfair advantage, will be refused.”
*250 In the case of Little, administrator, v. District of Columbia (19 C. Cls. R., 323), it is said, in the syllabi:
“The Court of Claims is not bound by special rules of pleading, and seeks to administer justice by forms the most simple and convenient; but nevertheless the allegations and proofs must so far correspond as to secure to the defendant the benefit of the principle of res judicata.'''1
A case very similar to the one at bar was decided this term of the court, Murray, administratrix of John N. Blood, deceased, and James A. Blood, in his own right, v. The United States, No. 8125. Suit in that case was commenced originally by the heirs of John hi. Blood, then changed to Murray, administratrix of the estate of John N. Blood; it was shown in the evidence that James A. Blood was a silent partner, and in the proceeding a judgment was rendered in favor of the administratrix of tho partner bringing the suit for one-half of the value of the property taken or destroyed. A motion was then made to permit James A. Blood, the silent partner, to become a party in the proceeding, after elaborate argument and due consideration by the court the motion of John N. Blood was allowed and a judgment was rendered in his favor for his share, to wit, one-half of the damages incident to the depredation committed by tho Indians. The motion of James A. Blood was not made for several years after the limitation of three years had elapsed.
Applying the law of these cases the motion to permit the amendment so as to include the two partners, José C. Gonzales should be allowed, as above stated.
A more serious question, however, arises in this case than the question of amendment. The statute of the court’s jurisdiction provides, in defining the limit of the power of the court, that it shall have jurisdiction: “First, of all claims for property of citizens of the United States taken or destroyed by Indians, * ® * without just cause or provocation.” (26 Stat. L., 851.)
The right to maintain a suit is based fundamentally on the ownership of the property affected by the depredation in the person or persons bringing the suit. This ownership may be in the person individually, or potentially if sued in a representative capacity ;■ but the ownership or right must be in *251 some legal form in the person asserting the rights of plaintiff. The property in this case came through three sources, a part of it from Jose Gonzales, who individually owned a portion of the sheep making the consolidated flock (referred to in the ■findings), a part of it from Nestor Armijo, and the balance from Miguel Fischer.
No question arises on that part of the sheep which came from the partner, Jose Gonzales, but as to the other two sources the right is most seriously questioned by the defendant.
It is shown in the findings that 4,000 of the sheep came from Nestor Armijo and Jose Gonzales and Pedro Gonzales, who had them on shares, under the contract that they were to pay Armijo 2 pounds of wool per sheep per year, and at the end of a given time to return to Armijo the same number of sheep that was originally received from him. It is not shown what the exact contract was, the same having been destroyed by Jose Gonzales shortly after the taking of the sheep.
The contract with Fischer is in writing and fully appears in the second finding. After the loss of the sheep the parties returned to Armijo the number which had been received from him and to Fischer the number of 1,745. Fischer brought suit on the contract and recovered the sum of $1,805, being $1 per head for the sheep not returned. The suit by Fischer, as shown by the records stated in the findings, was based on the theory that it was a bailment, and the recovery was upon the ground that the plaintiffs had become the insurers of the sheep, and having failed to return them they were liable under the terms of the agreement.
The legal issue is whether in both or in either of these contracts in partido the transaction was a sale or a bailment, and upon the decision of that question depends the right to recover; if the plaintiffs were not the owners in legal contemplation, then they have no right to a judgment. It is often a very difficult question to determine whether the right of property passed by the legal effect of a transaction between parties. In the case of Sturm v. Boker (150 U. S., 312), it is stated:
“The recognized distinction between bailment and sale is that when the identical article is to be returned in the same or some other altered form the contract is one of bailment and the title to the property is not changed. On the other hand, *252 no obligation to return the specific article and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return and the title to the property is changed; the transaction is a sale.”
In the case of Powder Company v. Burkhardt (97 U. S., p. 110), it is said:
“ Where articles are delivered to a manufacturer and the product of the identical articles delivered is to be returned to the original owner in new form, it is a bailment, and the title does not vest in the manufacturer; that is, if the manufacturer may deliver another product of equal value it is a sale or a loan, and the title vests in the manufacturer.”
In the case of Austin v. Siegelman et al. (18 Fed. Rep., 519), it is said:
“When by the terms of a contract under which the property is delivered by an owner to another the latter is under no obligation to return the specific property, either in its identical form or some other form in which its identity may be traced, but is authorized to substitute something else in its place — either money or some other equivalent — the transaction is not a bailment, but is a sale or exchange.”
The case of Carpenter v. Griffin et al. (9 Paige (N. Y.) Ch., 310), it appeared from the facts in that case that the plaintiff had leased his farm to the defendant, together with the sheep thereon and 30 cows, for the term of five years. The lease contained the following clause:
“Cows of equal age and equal value to be returned at the end of the said term, and also the sheep.”
It was held bjr the chancellor in this case, in substance, that the right of property passed under the terms of the agreement, and in the opinion is cited the case of Hurd v. West (7 Cow., 352), and it is said that in that case “the Supreme Court decided that where a certain number of sheep were hired b3r A to B, at a pound of wool a head per annum, and at the expiration of the time limited B was to return to him the same number of sheep, and of as good quality, the title to the sheep did not continue in A, but that the lessee might dispose of the sheep let, and return others of the same value at the time appointed for the fulfillment of the contract on his part.”
In the case of Chase v. Washburn (Ohio St. Rep., 244), it is *253 held in substance, where the obligation is to redeliver not the specific thing furnished, but another article of the same kind and value, the property passes to the depositary as full as in the case of ordinary sale and exchange.
When the identical thing delivered is to be restored, though in an altered form, the contract is one of bailment, and the property does not pass, but where no obligation rests upon the party to restore the specific article and he is at liberty to return another thing of equal value, ho becomes a debtor and the title to the property is changed;'it is a sale. (Lonegran v. Stewart, 55 Illinois, 45.)
It is insisted on the part of the defense that the right of property did not pass in the Armijo transaction because of want of a written agreement, as required by a statute of New Mexico. There was an agreement, which, upon the loss of the sheep and the settlement with Armijo, the plaintiff, Jose Gonzales, destroyed as worthless paper.
The destruction of the paper having no reference to the claim now made against the United States and the Indians, no presumption unfavorable can arise against the parties in this transaction. But, conceding that a contract in writing did not exist, can it be maintained as a legal proposition that the right of the claimants is thereby invalidated to the extent of exonerating the parties responsible for the depredation ?
The statute upon which the defendants rely is, in substance, that in order to legally effect a sale of property, a certificate of sale shall be given to the purchaser with certain formalities in the presence of two witnesses. (Laws of New Mexico, 1851-52,192.) The attention of the court is called to page 49 of the compilation of 1865,'which requires certain formalities in order to constitute a sale. Applying to the transaction the law as applicable to the ordinary statute of frauds (the statute being a matter of personal defense to the party against whom the contract is attempted to be enforced), can the statute of New Mexico be invoked by the defendants, who stand with reference to the property as trespassers, although, in the absence of a certificate such as is required by the laws. of New Mexico, the contract may not have been such as that a court of law or equity would enforce. As between the parties, so long as th'e parties were in the *254 performance of the agreement, can the court hold the contract void upon the defense of a trespasser upon the property, and thereby discharge him from responsibility ?
The general rule is that a trespasser or wrongdoer, such as the Indians were in the depredation, can not raise- questions of title when the party suing is in possession of the property, claiming a right thereto.
The judgment of the court is that the claimants are permitted to file the amendment making new parties, and that the plaintiffs recover the sum of $3,827, as shown in Finding Y, embracing the sheep coming from Armijo and Jose Gonzales, and that the claim for the Fischer sheep is disallowed, making a judgment for said sum of $3,827.